**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
HIRAN SANCHEZ                 :
                              :
v.                            :     Crim. No. 3:20CV901(AWT)
                              :
UNITED STATES OF AMERICA      :
                              :
------------------------------x
```

### RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255

Petitioner Hiran Sanchez, proceeding <u>pro se</u>, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  The petitioner asserts two claims. First, he claims that his counsel rendered ineffective assistance because he did not contest Sanchez being subject to an offense level enhancement under the Sentencing Guidelines that was equivalent to conviction of a second count of sex trafficking, despite the fact that Sanchez was not in fact convicted of the additional count.  Second, he claims that his counsel should have challenged the order of restitution in the amount of $7,650; he contends the restitution should not have been awarded to the victims because it constituted lost income from illegal conduct, i.e. prostitution.

For the reasons set forth below, the petitioner's contentions are without merit and his motion is being denied

without a hearing.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On November 15, 2017, Hiran Sanchez was charged in a three-count indictment.  Count One charged him with conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c).  The victims were identified as "Minor Victim 1 ('MV-1') and Minor Victim 2 ('MV-2')".  U.S. v. Sanchez, 3:17-cr-00247 (AWT) Indictment (ECF No. 1) at 1.  Sanchez was the only defendant named in Count One.  The Indictment charged that he conspired with "others known and unknown to the Grand Jury".  Id. at 2. Count Two charged Sanchez with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c) and the victim was identified as MV-1.  Count Three charged Sanchez with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c) and the victim was identified as MV-2.

On January 29, 2019, Sanchez pled guilty to Count Three of the Indictment before U.S. Magistrate Judge Robert A. Richardson.  At the plea proceeding Sanchez was represented by Attorney Paul Thomas.  In connection with the guilty plea, Sanchez entered into and signed a plea agreement. U.S. v. Sanchez, 3:17-cr-00247 (AWT) (ECF No. 39) (the "Plea Agreement").  Pages 11 and 12 of the Plea Agreement are a

"Stipulation of Offense Conduct and Relevant Conduct" (the "Stipulation of Offense Conduct").

The Plea Agreement contained a section concerning calculation of the applicable Guidelines Range.  The parties agreed on an offense level with respect to MV-2.  The parties then agreed that because the Stipulation of Offense Conduct specifically established the commission of an additional offense, i.e., the sex trafficking of MV-1, Sanchez would be treated under the Sentencing Guidelines as if he had been convicted of the additional count charging that offense, i.e., Count Two.  <u>See</u> Plea Agreement at 5 ("Pursuant to U.S.S.G. § 1B1.2(c), because the stipulation attached hereto specifically establishes the commission of an additional offense, the defendant shall be treated as if he were convicted of additional counts charging that offense. Thus, the following calculations apply:"). The Plea Agreement then set forth the calculation of an offense level with respect to MV-1.  Then, the parties agreed that under the grouping rules, there would be an increase of two offense levels.

The Stipulation of Offense Conduct provided the following with respect to MV-2, the victim in Count Three, i.e., the count of conviction:

<u>Minor Victim 2</u>

In late April of 2017, the defendant, Hiran Sanchez, picked up Minor Victim 2 ("MV2"), who was then sixteen years old, as she was walking on a street in Hartford, Connecticut. That night, he took her to a motel in Waterbury, Connecticut, and had sex with her. Shortly thereafter, he began to promote her prostitution. A co-conspirator posted advertisements on the website Backpage, a website whose parent company was based in Texas, on which prostitution operations frequently advertised, to solicit prostitution customers for MV2. The defendant and the co-conspirator did not use real photographs of MV2 in the advertisements because she looked young. Sanchez would sometimes direct MV2 to speak to customers on the telephone. Sanchez set the prices as $150 for a 3O-minute "in-call," $250 for a 60-minute "in-call," and $350 for a 60-minute "outcall."

On the first day that MV2 worked in prostitution, she saw customers at a hotel in Hartford. She gave all of the money that she earned to Sanchez. Over the course of approximately one week, she saw approximately 6 "in-calls" at various hotels that Sanchez would take her to, and 6 "out-calls," to which Sanchez would drive her. A conservative estimate of how much money MV2 earned for Sanchez in prostitution is $3,900.

On the last night that MV2 was with Sanchez, she left a backpack that Sanchez had given her at the bus station; inside the bag, law enforcement found a room key for the Hartford hotel, along with items bearing Sanchez's name.

Throughout the relevant time period, Sanchez had a reasonable opportunity to observe MV2 and knew that he was causing her to engage in commercial sex acts.

Plea Agreement at 11.  In addition, the Stipulation of Offense

Conduct provided the following with respect to MV-1:

Minor Victim 1

In the summer of 2076, Minor Victim 1 ("MV1"), who was then fifteen years old, met Sanchez and began a romantic relationship with him. MV1 lied to Sanchez and told him that she was sixteen years old. MV1 noticed that Sanchez had women around, and he eventually told her that he was their pimp. Some time later, the women left him and Sanchez pressured MVl to begin working in prostitution for him. Sanchez had sex with MV1 during the period that she worked for him in prostitution.

Sanchez had a co-conspirator post advertisements for MV1's sexual services on Backpage, and she began to see customers. Sanchez set the prices at $150 for a 3O-minute in-call and $200 for a 60-minute in-call, and $200 for a 30-minute out-call or $250 for a 60-minute out-call. The advertisements also included a "two girl special" for $300 for 30 minutes or $500 for one hour. Sanchez would have MV1 see clients at hotels, including a hotel in Hartford, Connecticut, for in-calls, and would drive MV1 to various cities around the state of Connecticut for the out-calls. MV1 gave all of the money that she earned in prostitution to Sanchez. A conservative estimate of how much MV1 earned in prostitution for Sanchez is $3,750, based on her seeing approximately 5 calls per day, for $150 per call, for approximately 5 days. Sanchez would use TextNow, a cellular phone application made by company based in Canada, to create multiple phone numbers for various cell phones, and would use those phone numbers to communicate with potential clients and with MV1.

Throughout the relevant time period, Sanchez had a reasonable opportunity to observe MV1 and knew that he was causing her to engage in commercial sex acts.

Id. at 11-12.

Sanchez signed the Plea Agreement on page 10 and also signed on page 12 at the end of the Stipulation of Offense Conduct.

When Judge Richardson asked defense counsel whether he had had any difficulty in communicating with Sanchez, Attorney Thomas made note of the fact that Sanchez neither reads nor writes, stating:

Only to a limited extent occasioned by the fact that Mr. Sanchez neither reads or writes. And so that has required a sense of time to discuss the contents of written documents. But with that limitation noted, we have not had difficulty.

Tr. 1/29/19 Guilty Plea (ECF No. 8-1) ("Tr. 1/29/19") at 8:5-9. When asked whether he was satisfied with the services of his

attorney, Sanchez responded "Yes".  Id. at l4-16.  Then the

following exchange, during which Attorney Thomas stated that he

had read the indictment and a description of the charge to

Sanchez, occurred:

> THE COURT: All right. So I know that, Attorney Thomas, you
> just mentioned that Mr. Sanchez has difficulty reading and
> writing. So let me ask the two of you whether you have either
> read the Plea Agreement or, rather, read the Indictment and the
> description of the charge to Mr. Sanchez or how you have
> communicated that to him?
> MR. THOMAS: Yes.
> THE COURT: Yes, you read it to him?
> MR. THOMAS: Yes, I have.

Id. at ll:17-25.

Judge Richardson then asked a similar question concerning

the Plea Agreement, and Sanchez's response reflected that

Attorney Thomas had read the Plea Agreement to him:

> THE COURT:  All right. Very good.  Thank you. Mr. Sanchez,
> have you either read the agreement or had the agreement read to
> you by Attorney Thomas?
> THE DEFENDANT: I would read to him.
> THE COURT: Okay. And have you had a chance to discuss the
> agreement fully with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand the agreement, sir?
> THE DEFENDANT: Yeah.

Id. at 13:23 to 14:6.

Counsel for the government then proceeded to summarize the

terms of the Plea Agreement.  After counsel for the government

summarized the calculation of the offense level with respect to

MV-2, the court paused because Judge Richardson wondered if the

defendant and his counsel needed additional time to confer:

> MS. NAGALA: For Minor Victim II who is referenced in the Indictment, his base offense level is 30. That level is increased by 2 because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person who engaged in prohibited sexual conduct with a minor, and by an additional 2 levels because the offense involved commission of a sex act or sexual contact between the defendant and the minor victim. The offense level for that victim then is 34.
>
> You need time?
>
> THE COURT: Ready? You guys need additional time?
>
> THE DEFENDANT: No.

Id. at 19:22 to 22:8.

Counsel for the government then discussed the calculation of the offense level for MV-1 and the fact that the grouping rules would apply and result in a two-level increase.

In reviewing the contents of page 9 of the Plea Agreement, counsel for the government again referred to the fact that the sentencing for the offense of conviction would take into account the defendant's conduct with respect to MV-1:

> At the bottom of page 9, the agreement provides that if the guilty plea is accepted by the Court it will satisfy Mr. Sanchez's criminal liability in the District of Connecticut as a result of his participation in the sex trafficking in Minor Victims I and II. And at sentencing, the Government would move to dismiss Counts One and Two of the Indictment because that conduct will have been taken into account at sentencing.

Id. at 23:23 to 24:5.

The Plea Agreement contains the following provision with respect to restitution:

> Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution

7

in the amount of $3,750 to the person referenced as Minor
Victim 1 in the Indictment and $3,900 to the person
referenced as Minor Victim 2 in the Indictment, which are
conservative estimates of the amount of money that each of
those victims earned in prostitution for the defendant.

Plea Agreement at 3.  During the guilty plea proceeding, Judge

Richardson specifically highlighted this provision in the Plea

Agreement and then confirmed that Sanchez understood it:

Finally, the Court must order that you make
restitution. And as part of your Plea Agreement, you are
agreeing to make restitution in the amount of $3,750 to the
person identified as Minor Victim I, and $3,900 to the
person identified as Minor Victim II.
Let me ask the lawyers if my statement of the
penalties is correct?
MS. NAGALA: Yes, Your Honor.
MR. THOMAS: It is, Your Honor.
THE COURT: Mr. Sanchez, do you understand these
potential consequences of changing your plea from not
guilty to guilty today?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you have any questions about any of
these consequences either for your lawyer or for me at this
time?
THE DEFENDANT: No, Your Honor.

Tr. 1/29/19 at 30:12 to 31:3.

Judge Richardson also confirmed that Sanchez and his

attorney had discussed how the Sentencing Guidelines applied to

him.  See id. at 32:7-10 ("Have you and your attorney had a

chance to discuss how the Sentencing Guidelines might apply to

you?  THE DEFENDANT:  Yes, Your Honor.").  When it came time for

the defendant to state what he had done that made him guilty of

the offense to which he was offering to plead guilty, the

following exchange occurred:

8

THE COURT: Thank you.

. . .

So there is a section of the Plea Agreement known as the Stipulation of Offense Conduct, and it's pages 11 and 12 of the Plea Agreement.

Let me just ask you, Attorney Thomas, if you have read that provision or read that section to Mr. Sanchez?

MR. THOMAS: Yes, I did.

THE COURT: Mr. Sanchez, your lawyer has indicated that he has read the section of the Plea Agreement known as Stipulation of Offense Conduct and Relevant Conduct to you. That is the section that essentially describes what you did that shows that you are, in fact, guilty of the offense to which you're offering to plead guilty. Let me just ask you if your lawyer has described that section to you to your satisfaction?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand, based on your lawyer's description, what is encompassed within -- what is actually said in that section of the Plea Agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And based on what your lawyer has described to you or read to you, are the statements that are contained in that section of the Plea Agreement truthful and accurate to the best of your knowledge and belief, sir?

THE DEFENDANT: Yeah. Yes, Your Honor.

THE COURT: All right. Thank you.

Do you have any questions for your lawyer at this time about any of the statements that are contained in the Stipulation of Offense Conduct portion of the Plea Agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. So earlier I had you sign page 10 of the Plea Agreement. To the extent that you've just told me that your lawyer has read the -- read pages 11 and 12 to you and described what's on those pages to your satisfaction, and that in your belief the statements are truthful and accurate to the best of your knowledge and belief, you may go ahead and sign the signature line on page 12 of the Plea Agreement, sir.

Id. at 36:10 to 37:24.

Counsel for the government then summarized the evidence the

government would have introduced if the case had proceeded to

trial. She stated that "[a] co-conspirator of his posted advertisements on the website Back Page . . ." Id. at 38:24 to 39:1. Defense counsel asked for a pause when counsel for the government began discussing the evidence the government would introduce with respect to MV-2. Defense counsel again asked for a pause when counsel for the government began discussing the evidence with respect to MV-1. See id. at 39:5 (MR THOMAS:  May I have a moment?  THE COURT: Yes, you may.  MR. THOMAS:  Thank you, Your Honor."); Id. at 40:14-16 ("MR. THOMAS: I'm sorry. May we have a moment?  THE COURT: That's okay. No need to apologize. MR. THOMAS: Thank you, Your Honor.")

Once counsel for the government finished, Judge Richardson confirmed that Sanchez did not disagree with anything in the government's summary of the evidence that would be introduced if the case had proceeded to trial:

> THE COURT:  Thank you, Attorney Nagala. Just for the record, I noticed that during the Government's presentation Mr. Sanchez conferred with counsel a couple of times. And I don't want to know what was discussed. But to the extent that the Government's presentation largely mirrored the Stipulation of Offense Conduct section of the Plea Agreement, let me ask a couple of questions.
> Mr. Sanchez, did you hear what the Government just described here in open court?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And did you hear anything with which you disagree with?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Okay. Which portions did you disagree with?
> MR. THOMAS: Did you disagree with it?
> THE DEFENDANT: No, no.

> THE COURT: In other words, did the Government's
> presentation appear to be truthful and accurate to the best
> of your knowledge and belief, sir?
> THE DEFENDANT: Yes.

Id. at 42:2-23.

Sanchez was sentenced on July 1, 2019 to a sentence that
included 135 months of imprisonment with credit for time served,
a ten-year term of supervised release and restitution in the
amount of $3,750 to MV-1 and $3,900 to MV-2.

At the beginning of the sentencing proceeding the court
inquired whether defense counsel had had an opportunity to
review the Presentence Report as amended.  Defense counsel
indicated that he had been unable to access the second addendum.
There was a pause in the proceedings during which Attorney
Thomas read the second addendum to the Presentence Report to
Sanchez, after which he noted that he had previously read the
other portions of the Presentence Report to him.  This is
reflected in the following exchange:

> THE COURT:  . . .
>
> Mr. Thomas, have you had an opportunity to read the
> Presentence Report as amended?
> MR. THOMAS: Yes, with the exception of the
> latest addendum which was docketed, but for reasons that
> elude me but recur, I wasn't able to get access. But I
> understand from talking to Ms. Harte today it includes
> attachments that --
> THE COURT: Why don't we -- you're familiar with
> the report?
> MR. THOMAS: Well, I submitted the attachments and, as
> I understand it, it summarizes the report that was
> submitted to the Court.

> THE COURT: Why don't we just pause, give you a chance
> to read it and I was going to ask you how has your client
> been made aware of what's in the report. If you want to
> read it to him, I'm happy to wait until you do so.
>> (Off the record.)
> MR. THOMAS: Thank you, Your Honor. What I did, as I
> have done previously with the reports, is read them to Mr.
> Sanchez.

U.S. v. Sanchez, 3:17-cr-00247 (AWT) 7/1/19 Sentencing Tr. (ECF

No. 64) ("Tr/ 7/1/19") at 3:13 to 4:7.

Defense counsel advocated for a sentence of ten years of

imprisonment, which was the mandatory minimum sentence.

Attorney Thomas did not argue against treating the defendant's

conduct with respect to MV-1 as an additional offense and

following the grouping rules in calculating the Sentencing

Guidelines. Nor did Attorney Thomas argue against the two-level

increase, pursuant to § 2G1.3(b)(3)(B), based on the fact that

the offense involved the use of a computer or an interactive

computer service to entice, encourage, offer or solicit a person

to engage in sexual conduct with a minor. Had Attorney Thomas

made either of these arguments, doing so would have been

contrary to the express terms of the Plea Agreement.

Attorney Thomas did argue for a variance based on the

enhancement pursuant to § 2G1.3(b)(3)(B).  He argued:

> There is an agreed upon sentencing increase under the
> Guidelines because a computer was used. And while that
> somewhat mystifies, or does mystify Mr. Sanchez, because he
> didn't do it, he couldn't do it, I've explained to him that
> under the law in a conspiracy, activity of somebody else
> nonetheless goes to him. But I think beneath that the

> question remains, is he a worse offender? Is his crime
> worse? Because another person -- unidentified but of whom
> the government is aware was involved, because nobody
> disputes that Mr. Sanchez couldn't do this himself --
> whether that characteristic that the Sentencing Commission
> views as an enhancement is one that in this circumstance
> should apply to Mr. Sanchez.

Id. at 9:14 to 10:1. He also referenced the fact that he had

told Sanchez that he would make this argument:

> But the Court still has to determine what sentence best
> serves the overall purposes of sentencing in federal court,
> and needs to take into account as well . . . the possible
> offset for the increased seriousness of the offense because
> a computer was used -- which I told Mr. Sanchez I would
> argue that the Court should consider and I said the Court
> will consider it.

Id. at 10:8-15.

Defense counsel also argued for a departure based on

Sanchez's learning disability and cognitive deficits, as had

been detailed in a psychological evaluation included in the

second addendum to the Presentence Report.

The court concluded that this was not a case where the

mandatory minimum sentence was appropriate and declined to

depart under the Guidelines. With respect to the request for a

variance based on the use of a computer, the court stated:

> I think the government's sentencing memorandum at page 6
> gives a very good explanation of why you benefited from the
> use of a computer by someone else, at least as much as
> people usually benefit by using a computer themselves.

Id. at 30:18-22.

## II.  LEGAL STANDARD

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted).  A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if he has not, such a procedural default can be overcome by a showing of "cause" and "prejudice", Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, see Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002); Murray v. Carrier, 477 U.S. 478, 487-88 (1986).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity for a hearing, a district court may draw upon its

personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

To prevail on an ineffective assistance of counsel claim, the petitioner must show, first, that his "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694 . . . .

Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir. 1997). In this context, "there is no relevant difference between an [attorney's] act of commission and an act of omission." Padilla v. Kentucky, 559 U.S. 356, 370 (2010) (citation and internal quotation marks omitted). Rather, "[t]he court must then determine whether, in

light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). "That requires a substantial, not just conceivable, likelihood of a different result." Id. (citation and internal quotation marks omitted). To satisfy the prejudice element of the Strickland test, a petitioner "must make more than a bare allegation" of prejudice. United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993). "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). Courts should not second-guess the decisions made by defense counsel on tactical and strategic matters. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is

unreliable because of a breakdown in the adversarial process that our system counts on to produce just results[.]'" Aguirre, 912 F.2d at 561 (quoting Strickland, 466 U.S. at 696-67) (internal citations omitted)).

## III. DISCUSSION

Sanchez claims that he received ineffective assistance of counsel because defense counsel did not contest the increase in his offense level that resulted from treating the defendant's conduct with respect to MV-1 as equivalent to conviction of a second count of sex trafficking, despite the fact that he was not in fact convicted of the additional count.  In his reply memorandum Sanchez also appears to claim that defense counsel was ineffective because he did not contest the two-level enhancement pursuant to Guidelines § 2G1.3(b)(3)(B) for use of a computer or an interactive computer service.  As discussed below, both of these claims are clearly without merit.

Sanchez also claims that his counsel was ineffective because he did not challenge the restitution order. He argues that no restitution should have been awarded to the victims because the amounts at issue constituted lost income earned from illegal conduct, i.e. prostitution.  As discussed below, his challenge to the restitution order is not cognizable.

### A. Including Count Two in the Guidelines Calculation

The petition describes this claim as follows:

Appointed Defense Counsel did not refute:

> 1. two point increased guideline enhancement ~or grouping "counts" of conviction, defendant plead guilty and was sentenced to "one" count of 18 U.S.C. §1591. . . .

2255 Petition (ECF No. 1) at 4.

The record here shows that as to this claim Sanchez has failed to establish the first prong under Strickland, i.e., that his counsel's representation fell below an objective standard of reasonableness.

Shortly after Sanchez submitted his reply brief he submitted a sworn declaration.  See Declaration of Hiran Sanchez (ECF No. 10) (the "Declaration"). One area addressed in Sanchez's declaration was the second addendum to the Presentence Report.  Sanchez swore:

> 6. Attorney Paul Thomas did not review with me any amended version of my PSR before or during my sentencing, so I was unaware if any corrections were needed.
> 7. Attorney Paul Thomas did not review the new PSR Addendum with me before or during my Sentence Hearing.
> 8. Attorney Paul Thomas did not use any "Off of Record" time to speak to me about my new PSR Addendum while my sentencing was in progress that was cited in the Government's Opposition motion.

Id. at 1 ¶¶ 6-8.  However, the transcript of the sentencing proceeding confirms defense counsel did in fact read the second addendum to Sanchez, off the record, in open court.  Had he not

done so, the court would not have accepted his statement that he had done so.

As to treating the defendant's conduct with respect to MV-1 as if he had been convicted of an additional count charging the offense in Count Two, Sanchez swore in the Declaration that:

> 2. On 1/29/2019, I had my Change of Plea Hearing and plead guilty to one count of 18 U.S.C. §1591. Attorney Paul Thomas did not explain to me the risks or consequences of the Government's Plea Agreement Enhancements under Stipulated Offensive Conduct U.S.S.G. §1B1.2(c) and U.S.S.G. §3D1.4, which were used in the PSR to increase my total Guideline Calculation 4 levels.
> 3. I personally know nothing about Guideline Stipulated Offensive Conduct Enhancements.
> . . .
> 5. If I would have known how I was going to be enhanced 2 Levels for Multiple Counts of Conviction, after pleading guilty to "only" one count of 18 U.S.C. §1591, because I assumed that I would be sentenced for only this Count. Having this information would have helped my decision making to plead guilty knowingly.

Id. at 1 ¶¶ 2-3, 5.

However, the transcript of the guilty plea proceeding shows that in addition to defense counsel explaining this enhancement to Sanchez, it was explained by counsel for the government. Sanchez swore to tell the truth and was advised that if he provided any false answers to Judge Richardson's questions, he could be liable for perjury or for making a false statement under oath. Thereafter, consistent with the statements made by defense counsel to Judge Richardson, Sanchez assured Judge Richardson that defense counsel had read to him the Stipulation

of Offense Conduct and the Plea Agreement. Sanchez also assured Judge Richardson that he had a chance to discuss the Plea Agreement fully with his attorney and that he understood it. Moreover, Sanchez represented that he and his attorney had discussed how the Sentencing Guidelines applied in his case.

When counsel for the government summarized the terms of the plea agreement, she explained how Sanchez's conduct with respect to both MV-2 and MV-1 was taken into account in calculating the offense level and that the grouping rules resulted in an additional two levels being added.  She also explained that Counts One and Two would be dismissed because the conduct would have been taken into account at sentencing. Sanchez then represented to Judge Richardson that the summary by counsel for the government "fully and accurately summarize[d] the entire understanding that you think you've reached with the Government, sir?"  Tr. 1/29/19 at 26:21-22.

Based on the foregoing, the motion for relief on this ground is being denied.

### B.    Enhancement for Use of a Computer

Sanchez does not list this as a ground for relief in the petition, but he does refer to it in his reply brief and in the Declaration.  In deference to his pro se status the court addresses this argument.

In his reply brief, Sanchez argues:

> Defense Counsel was unconstitutionally ineffective for Not objecting over Evidence used by the Government for the U.S.S.G. §2G1.3(3)(B) two level guideline enhancement for Conspiracy to use a computer in Mr. Sanchez's Guideline Calculation for sentencing purposes in a Direct Appeal . . . .

Petitioner's Reply Brief (ECF No. 9) at 3-4.  He argues further that "Conspiracy cannot have a single defendant, Mr. Sanchez was erroeously enhanced under a pretense of a 'unidentifiable' co-defendant, the Defense's failure to raise and preserve this arguement simply undermines the confidence in Mr. Sanchez's Sixth Amendment Right." Id. at 4.  In the Declaration, Sanchez states under oath:

> 4. If I would have known how I was going to be enhanced 2 Levels for Conspiracy to use a computer with an unidentified person in my Guideline Calculation, it would have made a major difference in helping my decision making to see this information.

Declaration at 1, ¶ 4.

The record here shows that as to this argument Sanchez has failed to satisfy both the performance prong, i.e., that his counsel's representation fell below an objective standard of reasonableness, and the prejudice prong, i.e., that there is a reasonable probability that the result of the proceeding would have been different.  The Stipulation of Offense Conduct includes the fact that "[a] co-conspirator posted advertisements on the website Backpage", Stipulation of Offense Conduct at 11, and the two-level enhancement pursuant to § 2G1.3(b)(3)(B) was

21

because the offense involved the use of a computer or an interactive computer service.

As to the performance prong of <u>Strickland</u>, during the guilty plea proceeding the government summarized the evidence that would have been used to prove it's case.  Counsel for government described evidence that the defendant worked with another person or persons and that a co-conspirator posted advertisements on the website Backpage for the sexual services of both MV-1 and MV-2.  Sanchez represented to Judge Richardson that he did not disagree with anything included in the summary of the government's evidence.  That representation is consistent with the Stipulation of Offense Conduct, which references advertisements for the sexual services of MV-1 and MV-2 being posted Backpage, and which Sanchez represented to Judge Richardson was "truthful and accurate to the best of [Sanchez's knowledge and belief]".  Tr. 1/29/19 at 37:9-10.

In light of the government's evidence supporting this enhancement and Sanchez's representations as to the accuracy of that evidence, Sanchez cannot show that defense counsel's failure to object to the inclusion of this enhancement in the Guidelines calculations and/or to take an appeal with respect to the enhancement was outside the wide range of professionally competent assistance.

Nor can Sanchez satisfy the second prong of <u>Strickland</u>.

Rather than contest the applicability of the enhancement for use of a computer or an interactive computer service, defense counsel argued for a variance -- as he had advised Sanchez he would.  The argument for a variance was based on the fact that it was undisputed that Sanchez was not the person who actually used the computer, and in fact, Sanchez could not have used it himself, so his actual conduct was not worse because a computer was used.  This is an argument that the court considered and to which it gave greater consideration than it would have given to an argument that the enhancement for the use of a computer or interactive computer service did not apply.  Ultimately the court found the government's position more persuasive.  However, because the court gave consideration to the argument that could have been advanced on behalf of Sanchez with respect to the enhancement for use of a computer or interactive computer service, even though it was in the context of a variance as opposed to an argument as to the applicability of the enhancement, Sanchez can not satisfy the prejudice prong of Strickland.  The court gave full consideration to the argument that could have been advanced on his behalf and even if the argument had been advanced in the context of an objection to the applicability of the enhancement, the result of the proceeding would have been the same.

Based on the foregoing, the motion for relief on this ground is being denied.

### C. Restitution Order

Sanchez challenges the restitution order.  The petition states:

> Appointed Defense Counsel did not refute:
>
> . . .
>
> 2. restitution order for 7,650.oo over "illcit" earnings from prostitution.

2255 Motion (ECF No. 1) at 4 of 13.

Sanchez's challenge to the restitution order is not cognizable. "Nearly every circuit to consider the issue has concluded that an order of restitution may not be attacked in a § 2255 petition, even if the petition also alleges error in the sentence of imprisonment. See United States v. Hatten, 167 F.3d, 844, 877 (5th Cir. 1999); Barnickel, 113 F.3d at 706; Smullen v. United States, 94 F.3d 20, 25-26 (1st Cir. 1996)." Kaminski v. U.S., 339 F.3d 84, 88 (2d Cir. 2003). In Kaminski, the Second Circuit came to the same conclusion.

Moreover, Sanchez's argument that defense counsel was ineffective because he failed to challenge the restitution order would be unavailing. "[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, i.e., persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591,

receive restitution, notwithstanding that their earnings came from illegal conduct".   United States v. Mammedov, 304 Fed. App'x. 922, 926 (2d. Cir. 2008).   Thus, defense counsel could have not been deficient in failing to challenge the restitution order because any such challenge on the ground that the victims' income came from illegal conduct would have been rejected, based on the applicable statutes.

Based on the foregoing, the motion for relief on this ground is being denied.

## IV.   CONCLUSION

For the reasons set forth above, the Motion to Vacate, Set Aside or correct sentence under 28 U.S.C. § 2255, as amended, (ECF Nos. 1, 7) is hereby DENIED.

The court will not issue a certificate of appealability because Sanchez has not made a substantial showing of the denial of a constitutional right.   See 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Signed this 14th day of September, 2023 at Hartford, Connecticut.

_____
              /s/AWT
           Alvin W. Thompson
      United States District Judge